UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY WASHINGTON,

          Petitioner,

    -vs-

GARY FILLION, SUPERINTENDENT
COXSACKIE CORRECTIONAL FACILITY

          Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-00563T**

## I.  Introduction

*Pro se* Petitioner Terry Washington ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 6, 2004, in New York State, County Court, Monroe County (Hon. Patricia D. Marks), convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25(2)) (depraved indifference murder) and Assault in the Second Degree (Penal Law § 120.05(2)).  Petitioner was sentenced to an indeterminate term of imprisonment of twenty-two years to life on the murder conviction and to a determinate term of imprisonment of seven years on the assault conviction, with five years post release supervision.

## II.  Factual Background and Procedural History

Petitioner was charged in a five-count indictment with Murder in the Second Degree (Penal Law § 125.25[1]) (intentional murder),

Murder in the Second Degree (Penal Law § 125.25[2]) (depraved indifference murder), Criminal Possession of a Weapon in the Second and Third Degrees (Penal Law §§ 265.03[2], 265.02[4]), and Assault in the Second Degree (Penal Law § 120.05[2]). The charges arose from a shooting incident that occurred on the evening of September 23, 2001 on Mead Street in the City of Rochester, New York. See Monroe County Ind. No. 00645, dated 12/19/03 at Resp't Appendix A.

On June 14, 2004 a jury trial commenced in the Monroe County Court before the Hon. Marks.

Robert Rogers ("Rogers") testified that, on the afternoon of September 23, 2001, he was at home at 208 Avenue A. Rogers' girlfriend, Petitioner, and Petitioner's cousin's children were present. Brenda Palmo ("Palmo"), Petitioner's cousin, came to Rogers' home and, according to Rogers, she was crying and upset, and indicated to him and Petitioner that "the dude around the corner had slapped her in the face." T.T. 296, 297. Palmo asked Rogers and Petitioner to take a ride with her to see the man that had slapped her. T.T. 298-299. Rogers testified that he then saw two African American men, whom he did not recognize, come from around the corner and stand in front of his home. The two men threatened him, Petitioner, and Palmo. T.T. 300, 303. Rogers declined to go for a ride with Palmo and advised Petitioner not to get involved. Petitioner then left with Palmo. T.T. 301. Rogers testified that in November or December of 2003, Rogers saw

Petitioner and they talked about the events of September 23, 2001. At that time, Petitioner stated to Rogers that "[Rogers] had no evidence . . . .  No gun, no evidence, and that the victims was dead."[1]  T.T. 301-302.  On cross-examination, Rogers testified that while Petitioner was at 208 Avenue A on September 23, 2001, he did not observe Petitioner in possession of a gun, did not see a gun in the home, and that Petitioner never displayed a weapon to him. T.T. 306.

Justin Pearson ("Pearson") testified that, on September 23, 2001, he was with his brother, Cornell Douglass ("Douglass"), and Derrick Smalls ("Smalls") drinking and smoking marijuana on Mead Street when a car pulled up with Palmo, Petitioner, and another man in the car.  T.T. 277, 285.  Palmo, who had been driving, exited the vehicle and approached the group, at which point Smalls "smacked" the beer she was carrying out of her hand.  T.T. 277. Smalls then approached the front passenger side of the vehicle where Petitioner was seated and began to hit Petitioner.  T.T. 277-279, 289-290.  Douglass walked behind Smalls.  According to Pearson, Smalls dove into the car in the process of striking Petitioner and Petitioner "[p]ut [Smalls] in like a head lock or something."  T.T. 278-290.  Douglass, who was still positioned behind Smalls, grabbed at Petitioner.  The man in the back seat of

---

[1]

At trial, the parties stipulated that Douglass was now deceased due to an unrelated incident, and Petitioner had nothing to do with it.  T.T. 451.

the car then got out and joined in the melee.   T.T. 277-279.
Pearson testified that he then heard a gunshot and ran away and
later met up with Douglass, who indicated to him that he had been
shot.   T.T. 279.   Pearson testified that he did not observe any
guns at any point throughout the incident.   Pearson eventually
returned to the scene of the crime and observed Smalls laying face
down in the street.   T.T. 283.

Christine Smith ("Smith") testified that, at approximately
7:30 p.m. on September 23, 2001, she was sitting in her kitchen at
43 Mead Street when she heard two gunshots.   Smith testified that
she ran to find her sister and then rushed to her front door to see
what had happened.   Smith testified that she saw an African-
American male running down Mead Street toward Remington Street.
She called 911 and then went outside.   Smith testified that she
walked down off her porch and saw an African-American woman
kneeling on the ground over an African American male who was lying
face down in front of Smith's hedges.   T.T. 168-170.

Officers Jorge Perez and Brian Sextone of the Rochester Police
Department ("RPD") arrived shortly after the 911 call.   Officer
Perez testified that, upon arrival at the scene, he observed a
black male lying face down on the ground on the sidewalk with what
appeared to be a gunshot wound to the man's upper left back.   T.T.
184-185.   Emergency personnel arrived shortly thereafter and took
the man, who was identified as Smalls, to the hospital where he

died.  T.T. 183-187.  While at the scene of the crime, Officer Sextone learned that a second individual by the name of Cornell Douglass had also been shot.  Officer Sextone testified that he followed emergency personnel to Strong Memorial Hospital where Douglass was taken for treatment.  At the hospital, Officer Sextone observed wounds to Douglass' left arm and left hip.  T.T. 193-196.

Evidence technicians from the RPD subsequently arrived at Mead Street and took photographs and measurements and searched the area for physical evidence.  They recovered projectile pieces or bullet fragments at two different locations on Mead Street near the shooting.  T.T. 244, 249.  They also secured a vehicle located at 232 Whitney Street in the City of Rochester, which was involved in the incident.  Petitioner's fingerprints were found in the front passenger interior of the vehicle as well as the outside of the vehicle.  The victim's fingerprints were also found on the exterior of the vehicle.  T.T. 223-231.

Dr. Thomas Smith ("Smith"), the Chief Medical Examiner for the Monroe County Medical Examiner's Office, performed the autopsy on Smalls and concluded that Smalls died from a single gunshot wound to the upper chest which entered through Smalls' back, traveling back to front, left to right, and then slightly down and through both lungs, exiting from the victim's right chest near his armpit.  T.T. 204, 211-213.  On cross-examination, Smith testified that his opinion with respect to the angle of the bullet that killed Smalls

was made "[w]ithin reasonable medical certainty," although "reasonable minds [could] differ as to the direction of [the] bullet."  T.T. 217.

In November 2003, police located Petitioner in Elkhart, Indiana, where they took him into custody and questioned him about the September 23, 2001 homicide.  Initially, Petitioner denied being in Rochester around the time of the homicide, and denied any involvement in the death of Smalls.  After being confronted by the police with information placing him at the scene of the crime, Petitioner changed his story.  Petitioner eventually told police that he had driven to Mead Street on the day of the shooting with his cousin Brenda, her two young children, and his friend Tyrone. Petitioner was in the front passenger seat, Brenda drove the vehicle, and Tyrone was in the back seat with Brenda's two children.  Brenda got in an argument with various individuals on Mead Street, and then a man came up to the front passenger side of the vehicle and began to punch him through the window.  Petitioner told police that the individuals on Mead Street dragged Tyrone out of the car and that he and Tyrone believed one of the individuals in the group had a gun.  Petitioner told police that he then got out of the vehicle and ran away, and it was not until some time later that he learned of the shooting.  Police continued to question Petitioner and took a written statement from him.  In the process of doing so, Petitioner admitted that he was the shooter.

In his written statement, Petitioner stated that he was dragged out of the vehicle by two individuals and was getting punched, kicked, and dragged, when he saw one of the men drop a gun.  Petitioner fought with one of the men who was standing between him and the car door.  Petitioner explained that a struggle ensued and that the gun fell near the car door.  At that point, he reached down, grabbed the gun, and then tried "to scare the dudes off by pointing the gun at them."  Petitioner stated that one of the men grabbed his hand and Petitioner pointed the gun in the air and fired a shot to scare them.  When the man continued to fight him, Petitioner fired the gun again, not knowing where it was aimed.  Petitioner saw one of the men fall to ground, and he dropped the gun and ran away.  T.T. 344-348.

At trial, Petitioner testified to another version of events. He testified that although he was struck by a man through the window of the car, that person had stopped striking him when someone else began striking him from the back seat.  During that struggle, a gun fell into the area between his right leg and the passenger door.  Petitioner testified that he reached over his body with his left hand, grabbed the gun, and transferred it to his right hand.  According to Petitioner, as he was bringing the gun closer to his body, the man in the backseat grabbed his arm. Petitioner's hand was on the trigger when the person grabbed him and the gun went off.  After the first shot fired, Petitioner

testified that the man in the back seat released his arm and the gun fired again.   Petitioner testified that he then exited the vehicle, ran from the scene toward Remington Street, and discarded the gun as he ran away.  T.T. 374-378, 389-425.

At the close of Petitioner's trial, he was found guilty of Assault in the Second Degree (with regard to Douglass) and Depraved Indifference Murder (with regard to Smalls), and acquitted of the two weapons possession counts.   T.T. 573.   After the verdict was rendered, defense counsel moved, pursuant to N.Y. Crim. Proc. Law ("C.P.L.") § 330.30[1],[2] to set aside the verdict on the grounds that the verdict was against the weight of the evidence, the verdict was legally insufficient, and that the verdict was repugnant and inconsistent.   See Pet'r Motion to Set Aside Verdict at Resp't Ex. A at 14-21.   The People opposed the motion.   After listening to oral arguments on the motion, the trial court accepted the People's arguments and denied Petitioner's motion to set aside the verdict.   T.T. 576-577.

Petitioner was sentenced to an indeterminate term of twenty-two years to life on the murder conviction and to a concurrent

---

[2]

C.P.L. § 330.30[1] provides that:

[a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

seven year determinate term of imprisonment on the assault conviction, with five years of post release supervision. Sentencing Mins. [S.M.] 17.

Petitioner appealed his judgment of conviction on the following grounds: (1) that the evidence was legally insufficient to support his conviction for depraved indifference murder; and (2) ineffective assistance of trial counsel based upon counsel's failure to preserve the legal insufficiency issue. See Pet'r Br. on Appeal, Points I-II at Resp't Appendix B. The Appellate Division, Fourth Department unanimously affirmed Petitioner's conviction on March 27, 2009. People v. Washington, 60 A.D.3d 1454 (4th Dep't 2009) (Resp't Appendix E); lv. denied, 12 N.Y.3d 922 (2009) (Resp't Appendix G).

On or about July 1, 2010, Petitioner filed a motion for a writ of error coram nobis, which was denied. See People v. Washington, 77 A.D.3d 1456 (4th Dep't 2010) (Resp't Appendices H, J); lv. denied, 16 N.Y.3d 800 (2011) (Resp't Appendix M).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) his conviction was improperly obtained by the use of a coerced confession; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. See Pet. ¶ 12 (Dkt. No. 1).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

### III.  Analysis of Petitioner's Claims

### 1.  Petitioner's Coerced Confession and Ineffective Assistance of Trial Counsel Claims are Procedurally Defaulted

At ¶¶ 12(b)[3] and 12A (Ground One) of the petition, Petitioner argues that: (1)  his conviction was improperly obtained by the use of a coerced confession; and (2) he received ineffective assistance of trial counsel based upon counsel's failure to object to Petitioner's allegedly coerced confession, failure to object to the prosecutor's summation, failure to object various jury instructions, failure to object to the trial court's submission to the jury of two counts of murder for one death, and for failure to object to the manslaughter charge, which was not charged in the indictment.  See Pet. ¶¶ 12(b), A (Ground One).  Because Petitioner raises these claims for the first time in the habeas petition, they are unexhausted.  As discussed below, however, because Petitioner no longer has a state court forum in which to exhaust these claims, the Court deems them exhausted and procedurally defaulted.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted

---

[3]

Immediately preceding ¶ 12A (Ground One) of the petition, Petitioner lists the following: "(b) conviction obtained by use of coerced confession."  Pet. ¶ 12.  It is unclear to the Court if Petitioner wishes to raise this contention as a stand-alone claim or if he raises it as support for his ineffective assistance of counsel claim, which is listed as the first ground (Ground One) of the petition.  The Court liberally construes the ambiguity in Petitioner's favor and interprets the contention set forth at ¶ 12(b) as a stand-alone claim that his conviction was improperly obtained by the use of a coerced confession.

the remedies available in the courts of the State. . . ."  28
U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526
U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d
825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  Here,
Petitioner failed to raise these claims in the state courts, and,
consequently, they are unexhausted for purposes of federal habeas
review.  At Point I of its Memo. of Law, Respondent argues that
these claims should be deemed exhausted but found to be
procedurally barred from habeas review because Petitioner has no
means to exhaust the claims in state court. Grey v. Hoke, 933 F.2d
117, 120-21 (2d Cir. 1991) ("[f]or exhaustion purposes, 'a federal
habeas court need not require that a federal claim be presented to
a state if it is clear that the state court would hold the claim
procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263
n.9 (1989)); Spence v. Superintendent, 219 F.3d 162, 170 (2d Cir.
2000) ("Because [petitioner] failed to raise his claim in the
ordinary appellate process and can now no longer do so, it is
procedurally defaulted.")); C.P.L. § 440.10(2)(c) (court must deny
motion to vacate where claim is matter of record that could have
been raised on direct appeal but unjustifiably was not).  The Court
agrees with Respondent that the record-based claims are
procedurally barred, and may only be reviewed if Petitioner
establishes cause for the default and resulting prejudice, or that
a fundamental miscarriage of justice will result from the Court's

failure to review the claims.   See e.g., Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001);  accord Carvajal v. Artuz, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim [ ] procedurally defaulted.'") (quoting Aparicio, 269 F.3d at 90; alteration in Carvajal).

Petitioner has not alleged cause and prejudice to overcome the procedural default.  Moreover, for purposes of the miscarriage-of-justice exception, he has made no showing that he is "'actually innocent' (meaning factually innocent) of the crime for which he was convicted." Carvajal, 633 F.3d at 108 (citing Bousley v. United States, 523 U.S. 614, 622, 623 (1998);  footnote omitted). Accordingly, Petitioner's coerced confession claim (Pet. ¶ 12(b)) and his ineffective assistance of trial counsel claim (Pet. ¶ 12 A) are procedurally defaulted from review by this Court.  The claims are dismissed.

## 2.   Ineffective Assistance of Appellate Counsel

At ¶ 12B (Ground Two) of the petition, Petitioner argues, as he did in his coram nobis application, that he received ineffective assistance of appellate counsel because: (1) appellate counsel raised an ineffective assistance of trial counsel claim; (2) appellate counsel failed to raise several weight of the

evidence arguments; and (3) appellate counsel failed to "marshal the favorable testimony." See Pet. ¶ 12 B(1)-(3). The Appellate Division, Fourth Department adjudicated this claim on the merits when it summarily denied Petitioner's coram nobis application. Sellan v. Kuhlman, 261 F.3d 303 (2nd Cir. 2001) (holding that a summary denial constitutes an adjudication on the merits); see also Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.

Under AEDPA, the Court may award habeas relief only if the state court's adjudication of the merits of his federal claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or amounted to an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2). Petitioner's claim fails under this standard.

When a petitioner asserts that he/she was denied the effective assistance of appellate counsel, a federal court must review appellate counsel's performance according to the two-pronged

standard established for reviewing a trial counsel's performance in Strickland v. Washington, 466 U.S. 668 (1984). This test requires that petitioner demonstrate that counsel's performance fell below an objective standard of reasonableness, and that there is a "reasonable probability" the outcome would have been different, but for counsel's alleged error. Strickland, 466 U.S. at 688-94.

Mere omission of a non-frivolous argument is insufficient to demonstrate constitutionally deficient performance. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)), cert. denied, 513 U.S. 820 (1994). To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his/her claim would have been successful before the state's highest court. Mayo, 13 F.3d at 534 (quotation omitted).

### (A) Appellate Counsel was Not Ineffective for Arguing Ineffective Assistance of Trial Counsel

At ¶ 12 B(1), Petitioner appears to fault appellate counsel for raising an ineffective assistance of counsel claim on the basis that trial counsel failed to properly preserve a legal sufficiency argument.[4]  As the Court understands Petitioner's pleadings, his argument is based on his belief that the legal sufficiency claim was, in fact, preserved by way of defense counsel's motion to set

---

[4] The Court notes that Respondent has not specifically addressed this portion of Petitioner's ineffective assistance of appellate counsel claim.  See Resp't Supplemental Answer at 3.

aside the verdict.  See Pet. ¶ 12 B(1).  To the extent Petitioner argues such, this claim is meritless.

In New York, a sufficiency objection must be specifically made to the trial court in the form of a motion to dismiss at trial.  See People v. Hines, 97 N.Y.2d 56 (2001).  The record before this Court reflects that trial counsel moved to dismiss the depraved indifference murder charge at the close of the People's case (T.T. 360), but that he did not renew his motion at the close of the defense's case.  By failing to do so, he waived subsequent review of that determination.  See id. at 61 (holding that once a defendant presents evidence on a charge at his trial, he subsequently waives any argument going to the sufficiency of the evidence for purposes of appellate review).  Thus, the Appellate Division properly determined that Petitioner's legal sufficiency claim was unpreserved for appellate review.  Trial counsel's motion to set aside the verdict did not properly preserve Petitioner's legal sufficiency argument for appellate review.  It cannot therefore be said that appellate counsel's performance in raising an ineffective assistance of trial counsel claim based on trial counsel's failure to properly preserve the sufficiency argument was constitutionally deficient.

Accordingly, this portion of Petitioner's claim is meritless and is dismissed.

**(B)   Appellate Counsel was Not Ineffective for Declining to Raise Claims Related to the Weight of the Evidence**

At ¶ 12B(2), Petitioner asserts that appellate counsel was ineffective because he "failed to raise issues that [were] raised below" with respect to "weight of the evidence"[5] and that "the trial evidence and its weight was sufficient for the justification/self-defense defense." Pet. ¶ 12 B(2)(a)(b). These contentions are meritless.

Initially, the Court points out that appellate counsel submitted a persuasive, well-researched brief on direct appeal in which he argued two issues: that the evidence was legally insufficient to support Petitioner's conviction for depraved indifference murder; and, that trial counsel was ineffective for failing to preserve the legal sufficiency issue. See Pet'r Br. on Appeal, Points I-II at Resp't Ex. B. Petitioner was tried and convicted in 2004, and his appeal was perfected in 2008. In New York State, from 2002 to 2006, the depraved indifference law underwent significant changes;[6] appellate counsel's brief

---

[5]

Presumably, the issues Petitioner is referring to are those that were raised in his motion to set aside the verdict: (1) that the verdict was against the weight of the evidence; and (2) that the verdict is repugnant and inconsistent.

[6]

Between 2002 and 2006, New York's interpretation of the statutory requirements of depraved indifference murder changed. Prior to this time, the New York State Court of Appeals had held that this offense required a reckless state of mind, and that its element "under circumstances evincing a depraved indifference to human life" referred to an objectively determined degree-of-risk standard. See People v. Register, 60 N.Y.2d 270 (1983); People v. Sanchez, 98 N.Y.2d 373 (2002). Through a series of cases, the New York State Court of Appeals gradually modified at this interpretation. See

strategically addressed these changes as they related to Petitioner's case. Id. Furthermore, the weight of the evidence issues that had been raised in Petitioner's motion to set aside the verdict had been briefed and orally argued in front of the trial court and determined to be meritless. To this extent, it cannot be said that appellate counsel's decision to focus his brief on critical changes in the depraved indifference law and forego raising a weight of the evidence argument that had already been argued extensively and determined to be meritless was objectively unreasonable.

Moreover, Petitioner has and cannot demonstrate that there is any likelihood that the outcome of his appeal would have been different had appellate counsel raised a weight of the evidence argument. Under New York law, which the Court must consider here in evaluating an issue's appellate strength, see, e.g., Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001) (applying New York law to explain the futility of a potential appellate claim), intermediate appellate courts must give "great deference" to a jury's decision. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Because they see

---

People v. Hafeez, 100 N.Y.2d 253, 792 N.E.2d 1060, 762 N.Y.S.2d 572 (2003); People v. Gonzalez, 1 N.Y.3d 464, 807 N.E.2d 273, 775 N.Y.S.2d 224 (2004); People v. Payne, 3 N.Y.3d 266, 819 N.E.2d 634, 786 N.Y.S.2d 116 (2004); People v. Suarez, 6 N.Y.3d 202, 212-15 (2005). In 2006, the Court of Appeals explicitly overturned its previous interpretation, holding that "under circumstances evincing a depraved indifference to human life" — not recklessness — was the culpable mental state for the offense. People v. Feingold, 7 N.Y.3d 288 (2006); see also, e.g., Mannix v. Phillips, 619 F.3d 187, 197-98 (2d Cir. 2010), cert. denied, 131 S. Ct. 611 (2010) (describing New York's changed depraved indifference law).

and hear witnesses, the jury is the primary evaluator of "issues of credibility, as well as the weight to be accorded to the evidence presented."  See People v. James, 35 A.D.3d 762, 763 (2d Dept. 2006) (citing People v. Gaimari, 176 N.Y. 84, 94 (1903); People v. Sorrentino, 12 A.D.3d 1197, 1197 (4th Dept. 2004).  The jury's determination, therefore, should not be disturbed unless it is "clearly unsupported by the record."  James, 35 A.D.3d at 763.

In Petitioner's case, the jury had considerable support in the record when it convicted him of intentional assault (with regard to Douglass) and depraved indifference murder (with regard to Smalls). The jury heard testimony that, on the evening of September 23, 2001, Petitioner, Tyrone, Palmo, and Palmo's two young children drove to Mead Street.  Petitioner was sitting in the front passenger seat of the car, Palmo was driving, Tyrone and Palmo's two children were in the backseat.  Petitioner was seated in the vehicle when Palmo exited it, and became involved in an argument with individuals on Mead Street.  Smalls then approached the vehicle and began swinging at Petitioner.  Tyrone exited the vehicle.  Petitioner found himself armed with a handgun from which he fired two shots, one hitting Smalls in the back and killing him and one hitting Douglass in the arm and hip area and injuring him. Although the jury heard testimony from Petitioner that the gun had simply gone off in the course of the struggle, he did testify that his finger was on the trigger when the gun fired and that he had

squeezed the trigger twice.  T.T. 395-397.  Further, the self-
serving statements of Petitioner at trial -- which were, in various
respects, inconsistent with his previous statements to police --
that his actions were justified was countered by evidence presented
by the prosecution that Petitioner accompanied Palmo to Mead Street
in response to an incident that had occurred earlier that day, that
Petitioner had not been attacked or threatened with a weapon, and
that Smalls, in particular, had been shot in the back.  T.T. 205-
207, 282-283, 323-348, 367-379.  Accordingly, the jury's finding
that Petitioner was guilty of depraved indifference murder and
intentional assault was not "clearly unsupported by the record."
See James, 35 A.D.3d at 763.  The Court finds, therefore, that
there is no merit to Petitioner's claim that appellate counsel was
ineffective for failing to challenge the weight of the evidence on
direct appeal.

Finally, the verdicts were not repugnant or inconsistent as a
matter of state or federal law, and counsel therefore was not
unreasonable in failing to raise this particular weight-of-the-
evidence issue on direct appeal.  Repugnancy or inconsistency in a
verdict "is determined by examining the charge to see the essential
elements of each count, as described by the trial court, and
determining whether the jury's findings on those elements can be
reconciled."  People v. Loughlin, 76 N.Y.2d 804, 806 (1990).  Here,
the acquittals on the weapons possession charges did not negate an

essential element of the counts for which Petitioner was convicted. See People v. Goodfriend, 64 N.Y.2d 695 (1984); People v. Davis, 270 A.D.2d 357 (2d Dep't 1985).  The jury was charged with respect to each count and the pertinent legal definitions, including the definitions of the crimes and the terms contained within the crimes.  The jury was also instructed on the issue of temporary innocent possession of a weapon, and that charge rendered the acquittal on the weapons possession charges consistent with the convictions of assault and murder.  Further, there is no overlap in the elements that would require that the jury having found an element not proven would necessarily require a finding that another element must be deemed disproven.  See People v. Henderson, 244 A.D.2d 889 (4th Dep't 1997); People v. Stitt, 201 A.D.2d 593 (2d Dep't 1994), People v. Miles, A.D.2d 445 (2d Dep't 1993). Here, the jury apparently found that the first action (shooting Smalls) was reckless insofar as Petitioner shot into a crowd of people, and the second action (shooting Douglass) was intentional insofar as it took place after Petitioner controlled the situation. This portion of Petitioner's claim is meritless and therefore dismissed.

### (C) Appellate Counsel was Not Ineffective for Failing to "Marshal the Favorable Testimony"

At ¶ 12 B(3), Petitioner argues that "appellate counsel failed to marshal the favorable testimony that was clearly in the record and in [his] favor," namely evidence pertaining to the particular

"angle of the [gun]shot" that killed Smalls.  Pet. ¶ 12 B(3).  As Respondent correctly points out in its Supplemental Answer, this claim is belied by the record, which shows that "appellate counsel did marshal the favorable evidence on [P]etitioner's behalf."  <u>See</u> Resp't Supplemental Answer at 3.

Contrary to Petitioner's position, appellate counsel submitted a thorough, well-researched brief, in which he effectively advocated on Petitioner's behalf.  <u>See</u> Pet'r Br. on Appeal at Resp't Appendix B.  In particular, the two points raised in appellate counsel's brief were supported by citations to relevant portions of the record and to caselaw, where applicable.  This portion of Petitioner's claim is therefore meritless.

In sum, Petitioner's appellate counsel claim provides no basis for habeas relief.  The state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly settled Supreme Court law.  Nor can it be said that it amounted to an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)(2).  Accordingly, the claim is dismissed in its entirety.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to

make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      February 22, 2012
            Rochester, New York